**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 11-618-01** |
| **KENNETH MORELAND** | **:** | |

<u>**O R D E R**</u>

AND NOW, this       day of                     , 201    , it is hereby

ORDERED that having reviewed the defendant's petition for relief under 28 U.S.C. § 2255 and

the government's response thereto, the defendant's petition is DENIED.

IT IS FURTHER ORDERED that no probable cause exists for the issuance of a

certificate of appealability and, therefore, none should issue.

BY THE COURT:

_____
HONORABLE LEGROME D. DAVIS
*United States District Court*

2

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

    v.                 :        CRIMINAL NO. 11-618-01

KENNETH MORELAND      :

GOVERNMENT'S RESPONSE TO DEFENDANT'S
PETITION UNDER 28 U.S.C. § 2255

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Michelle Rotella, Assistant United States Attorney for the District, responds to defendant's petition under 28 U.S.C. § 2255, and requests that it be denied, as follows:

I.    **PROCEDURAL BACKGROUND**

On October 6, 2011, defendant Kenneth Moreland was indicted by a grand jury and charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); attempted Hobbs Act robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Two); and carrying and using a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Three). The charges arose from the defendant's orchestration of and participation in a violent home invasion in which the victims were duct taped and threatened with a loaded shotgun.

On May 9, 2013, after a week-long trial by jury, defendant Moreland was convicted of all counts.  On August 12, 2013, the sentencing hearing was held. The defendant

3

was classified as a Career Offender, based on his offenses of conviction and his criminal record, pursuant to U.S.S.G. § 4B1.1.  His total offense level was therefore calculated at level 32, and his criminal history category established at VI, producing a guideline range of 360 months to life imprisonment.  The court imposed a sentence below the guideline range.  On Counts One and Two Moreland was sentenced to 240 months' incarceration on each charge, to run concurrently, and on Count Three he was sentenced to a consecutive, mandatory minimum sentence of 60 months' incarceration[1], for an aggregate total sentence of 300 months' incarceration. The district court also imposed a five-year term of supervised release and a special assessment of $300.

Moreland promptly filed his Notice of Appeal to the Third Circuit. He was represented at trial, sentencing, and on appeal by attorney Craig Hosay.  On July 18, 2014, the Third Circuit denied the appeal in a non-precedential opinion.  This Motion to Vacate pursuant to 28 U.S.C. § 2255 was timely[2] filed on October 12, 2015.

## II.    FACTUAL BACKGROUND

In January 2010, Kenneth Moreland recruited co-defendant Patrice Foy to commit an armed home invasion of a home in Glen Mills, Pennsylvania. Moreland chose this residence because he knew the family for a number of years and believed that the intended victim stored large sums of cash from his car sales business in a safe in his home. Moreland's belief was

---

1  On June 17, 2013, five weeks after the jury's guilty verdict in this case, the Supreme Court in *United States v. Alleyene*, No. 11-9335, held that a sentence for a violation of 18 U.S.C.§ 924(c) could not be enhanced beyond the statutory minimum of five years without a finding by the jury as to specific additional enhancements.  Thus, while the uncontroverted evidence at trial clearly established that the shotgun was "brandished" during these crimes, which would warrant a seven year mandatory minimum, the jury was not asked to deliberate as to that fact.  The Court was therefore limited to the five year mandatory minimum sentence on Count Three.

2  The Third Circuit has held that a conviction is not "final" until the expiration of the 90-day period in which the defendant may petition for certiorari to the U.S. Supreme Court.  *United States v. Kapral*, 166 F3d 565, 570-71 (3d Cir. 1999).  In this case, the Third Circuit issued its decision affirming Moreland's conviction on July 18, 2014.  He was permitted to file his petition for certiorari up until October 16, 2014.  The one-year time limitation for filing under 28 U.S.C. § 2255 was therefore extended until October 16, 2015.

4

based, in part, on a previous theft of a safe from this same victim's property a few years prior to this home invasion that netted Moreland guns, jewelry, and approximately $12,000 in cash.

Moreland chose Sunday, January 17, 2010, to commit the home invasion, and instructed Patrice Foy to get others to assist in the home invasion and to obtain weapons for use. Foy recruited co-conspirator Dayon Pinder, who in turn recruited defendant Maurice Thomas because Thomas could provide a shotgun.   On the day of the robbery Moreland drove his own white truck and picked up the others at their homes in Chester, Pennsylvania.  Moreland directed the robbers to take the $10,000 in cash he believed would be on the victim's dresser and titles to the cars from the car lot the intended victim maintained on Ninth Street in Chester, Pennsylvania. Moreland believed the titles would be in a safe in the house.  Before getting to the house, Pinder arranged for another car to use in the robbery, and Moreland drove them to get the car.

Moreland, Foy, Pinder, and Thomas then went to the Walmart on Route 322 and purchased a box of shotgun shells, because there was only one shotgun shell for the gun. Moreland told the others that he would show them the house and explain where to make entry, but that he could not go in because the victims would recognize him and his truck.  The others agreed to go into the house without Moreland. Moreland and Foy remained in Moreland's truck, with Pinder and Thomas following behind in their car. Moreland drove them by the victim's home, identified the intended victim (the car lot owner) as "Ernie," identified the house, and directed them to make entry by the side door. Moreland communicated this information to Foy, who was in Moreland's truck, and Foy in turn communicated the same information via his Nextel to Pinder and Thomas.

At approximately 5:10 p.m., Foy, Pinder, and Thomas entered the home through

the side door as instructed.  Thomas was armed with the fully loaded shotgun. Instead of encountering the car dealer, their intended victim, when they made entry, they mistakenly entered an apartment that was attached to the home.  Victim #1, the intended victim's son, was home and in the shower at the time, and victim #2, the son's pregnant girlfriend, was folding laundry in the main part of the apartment.  Maurice Thomas pointed the loaded shotgun at pregnant victim #2 and ordered her to give him the money and to get on the floor.  The robbers repeatedly asked where "Ernie" was and ordered her to give them the cash that was supposed to be on the dresser.  Victim #1 was then ordered out of the shower at gunpoint by Thomas and was put on the ground on his knees next to his girlfriend.  The robbers continued to demand money, saying, "We know Ernie has $5,000 in the dresser," questioning where the safe was, and telling the victims that they knew Ernie had the car lot on Ninth Street.

Victim #1 explained that they did not have any money, and that the money from the business had already been deposited.  As they questioned the victims, the robbers realized that they had the wrong people, and they asked how to get into the main house.  Defendant Foy then bound the victims' hands and feet with duct tape behind their backs, and shoved them onto the bed.

Defendant Thomas kept the shotgun pointed just a foot away from victim #1's chest during the robbery, and he and the others repeatedly threatened both victims. During the robbery there was a knock at the apartment door by a person whom Pinder recognized was the owner of the car lot in Chester and their intended victim.  The apartment door was locked, however, and the intended victim eventually went back into the main part of the house.  The robbers then fled the house.  When they left the victims were still bound by their hands and feet

on the bed, and the robbers instructed them to stay on the bed and not to move.  On the way out the robbers passed a friend of the victims who had just arrived, whom the robbers believed was a pizza delivery person.

The robbers stole $1,200 in cash from victim #1's dresser drawer, which was money from the car sales business.  They also stole his credit card, as well as victim #2's cell phone.  Pinder drove Foy and Thomas back to Chester, where Foy got back into Kenneth Moreland's truck.  Moreland and Foy then used the stolen credit card to make purchases at a Wawa, Home Depot, and a liquor store in Claymont, Delaware, and attempted to use it in Chester, Pennsylvania to withdraw money, but by that time the account had been closed.  Foy was caught on video at each of the three stores where he successfully used the stolen credit card to purchase merchandise.  Moreland remained in the truck and instructed Foy to go into each of the stores, but Moreland's truck was captured on video at the Claymont liquor store during the time that the stolen credit card was used.  At trial, Pinder identified Moreland's truck from the video.

The Pennsylvania State Police investigated the home invasion, but were not able to identify any of the assailants at that time and no arrests were made.  Some months later, on September 10, 2010, Kenneth Moreland was in local court on unrelated charges, and advised the State Police that he had information about a home invasion.  He was in custody at the time, but was transported to police headquarters along with his attorney. Moreland gave a statement to police in the presence of his attorney, identifying Foy, Pinder, and Thomas as the robbers, but claiming not to have any involvement himself. Moreland also "assisted" their investigation by driving with the state police and identifying the homes of each of the three others he named in

7

the home invasion.

Shortly thereafter, Dayon Pinder was indicted in the Eastern District of Pennsylvania on unrelated Hobbs Act robbery charges. Pinder then explained Moreland's role and participation in the home invasion, and Moreland became a target in the home invasion investigation.  On February 10, 2011, Moreland was again questioned about the home invasion, this time by lead investigator Jennifer Morrow of the Federal Bureau of Investigation and John O'Donnell of the Pennsylvania State Police.  Moreland first blamed his co-defendant Patrice Foy for the robbery, telling investigators that Foy repeatedly talked about robbing the owner of the car lot, whom Moreland knew was Manna.  Ultimately Moreland revealed that he was the one who actually set up the home invasion, recruited the others to go into the home, bought shotgun shells and loaded the weapons, then used the stolen credit card along with Foy after the home invasion.  Moreland again identified the same three co-conspirators.

Thereafter, defendant Patrice Foy was identified by victim #1 from a still photograph from the Claymont Liquor store as the person who had duct taped the victims during the home invasion.  Maurice Thomas was also identified through a photo array by victim #2 as the robber who had threatened her with the loaded shotgun.

The indictment was then issued in this case, and Moreland was interviewed for a third time during his transport into federal custody. He again implicated himself and the others to agents from the Federal Bureau of Investigation, but identified his role as minimal and questioned why he was charged with use of the gun when he never handled the gun.

Because both Moreland and Thomas confessed in this case but neither was cooperating or would be testifying, the district court severed the cases for trial. Kenneth

Moreland's case was tried first, on May 6, 2013. Prior to trial, the district court granted the government's request to admit evidence of Moreland's prior bad acts, specifically namely that he had stolen a safe from this victim a few years before the home invasion that contained $12,000 in cash, guns, and jewelry.

After a week-long trial the jury convicted Kenneth Moreland of all three charges in the indictment. On August 12, 2013, the district court held the sentencing hearing.  At the conclusion of the hearing the district court granted the defendant's request for a downward variance from the guideline range of 360 months to life imprisonment by imposing an aggregate sentence of 300 months' incarceration.

## III.  **LEGAL ARGUMENT**

Defendant Kenneth Moreland, through his newly appointed attorney, files this Petition on two grounds:  (1) that his Sixth Amendment right to assistance of counsel, and effective assistance of counsel, was violated; and (2) that his conviction and/or sentence was imposed in violation of his Fifth Amendment rights.  For the reasons outlined below, his claims are without merit and should be denied.

### A.  **Standard for Ineffective Assistance of Counsel**

The well-established standard for evaluating claims of ineffective assistance of counsel comes from *Strickland v. Washington*, 466 U.S. 668 (1984), where the Supreme Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 685. In keeping with its focus on the adversarial process, the Supreme Court in *Strickland* held that a claim of ineffective assistance of counsel

9

has two components -- inadequate performance of counsel, and prejudice resulting from that inadequate performance. The first part of the test requires the defendant to show that trial counsel's performance was constitutionally deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id*. at 687. The governing performance standards depend in large part on the standards set by the legal profession: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688.

In applying the "professional norms" standard, however, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Accordingly, the Court in *Strickland* held, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Even if the defendant could satisfy the first part of the *Strickland* test by showing that his attorney failed to satisfy professional standards, a defendant is not entitled to relief unless he can also satisfy the second part of the test, by showing that counsel's unprofessional errors actually prejudiced the defense. *Id*. at 687. The defendant has the burden of establishing prejudice, and it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding. *Id.* at 693.

Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994). The Court in *Strickland* explained that "[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." 466 U.S. at 694. Thus, the gravamen of the *Strickland* inquiry remains "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696; *see Lockhart v. Fretwell*, 506 U.S. 364, 368-69 (1993) (the proven errors must be so serious that the defendant was deprived of "a trial whose result is reliable."). The defendant must show an error which "constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 634 n.8 (1993), quoting *United States v. Timmreck*, 441 U.S. 780, 783 (1979).

As both of these components must be demonstrated to support a claim of ineffective assistance of counsel, the absence of one negates the need to address the other. The United States Court of Appeals for the Third Circuit has directed district courts to address the prejudice prong of the analysis first. *See McAleese v. Mazurkiewicz*, 1 F.3d 159, 170 (3d Cir.1993), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read *Strickland* as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted). The court of appeals in *McAleese* quoted the Court in *Strickland* as follows:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on

11

the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

*McAleese*, 1 F.3d at 171. It is clear that there is no merit to defendant Moreland's contention that his counsel was ineffective. He certainly has not demonstrated any prejudice, namely that even if there were errors, there is a reasonable probability that but for those unprofessional errors the result of the proceeding would have been different. This Court does not need to even consider the performance component of the Strickland test, as the defendant has failed to allege anything that rises to a cognizable claim of prejudice. Consequently, there is no merit to his assertion of ineffectiveness of counsel for any of the grounds in his Petition, and it should be dismissed in its entirety.

### B.     Defendant's Ground One:  Counsel was Ineffective for Failing to Object to the "Amendment" of the Charges in Closing

Moreland first claims that his attorney was ineffective because he failed to object when the government argued in closing a theory that was not charged in the indictment.  This, he claims, was a violation of his Fifth Amendment right to be tried on charges named in the indictment, and to be provided with due process of the law.  Specifically, he argues that the indictment charged that the business was the object of the robbery, but that the government argued otherwise in summation and therefore "amended" the charges in violation of his rights. He is wrong.  An examination of the record clearly demonstrates that the defendant's argument is without merit and should be denied.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" *U.S. Const. Amend. V*.  Because of this constitutional guarantee, "a court cannot permit a

defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States,* 361 U.S. 212, 217 (1960); *United States v. Vosburgh*, 602 F.3d 512, 531-32 (3d Cir. 2010).  From this rule comes the general prohibition against constructive amendments. See *United States v. Navarro*, 145 F.3d 580, 585 (3d Cir.1998) (a constructive amendment deprives a defendant of his Fifth Amendment right "to be tried only on charges presented in an indictment returned by a grand jury.")

An indictment will only be considered to be "constructively amended" when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged. *United States v. Daraio*, 445 F.3d 253, 259–60 (3d Cir. 2006). An indictment can be constructively amended through "evidence, arguments, or the district court's jury instructions," if they "effectively amend the indictment by broadening the possible bases for conviction from that which appeared in the indictment." *United States v. McKee*, 506 F.3d 225, 229 (3d Cir.2007).  When considering a claim of constructive amendment, the "key inquiry is whether the defendant was convicted of the same conduct for which he was indicted." *United States v. Daraio*, 445 F.3d at 260.  If a defendant is convicted of the same offense that was charged in the indictment, there is no constructive amendment. *United States v. Vosburgh*, 602 F.3d at 532.

That is exactly the case here.  The defendant was convicted of the same offenses as were charged in the indictment.  The evidence adduced at trial comported with the allegations in the indictment.  Dayon Pinder, one of the co-conspirators and one of the persons who robbed

the home, testified that Moreland chose this home for the robbery because he had known the family for years, and knew that they kept the car titles and large sums of cash from the owner's car business in the home.  Moreland communicated this to the other robbers to induce them into participating in the home invasion.  Indeed, Pinder agreed to take part in the robbery because he was promised $10,000 in cash from the business proceeds that they intended to steal.  Victim Ernie Manna V also testified that the robbers repeatedly demanded cash from the business, to which he advised that his father (the business owner), had just deposited the business money the day before in the bank. The robbers continued to demand money, however, and victim Manna testified that he gave them $1,200 in cash, <u>which was proceeds from the sale of a car from the car lot</u>.

Additionally, Special Agent Morrow and Pennsylvania State Trooper John O'Donnell both testified that Moreland confessed on multiple occasions to them.  In particular, in his statement on February 10, 2011, Moreland first blamed his co-defendant Patrice Foy for the robbery, telling investigators that Foy repeatedly talked about robbing the owner of the car lot.  Moreland ultimately confessed to setting up the home invasion himself, advising agents that he knew Manna for years, knew that he owned a car lot in Chester, and knew where his home was located in Glen Mills.

The fact that Moreland had stolen a safe containing $12,000 in cash some years earlier from this same residence supports the charges in this robbery.  The safe was owned by the business owner's brother, but was held at the business owner's house.  Moreland didn't know that the safe belonged to someone else – he stole it from the business owner.  The safe contained a large amount of money, which, as was established at trial, comported with what Moreland

already knew:  that the business owner kept large sums of money in his home.  Moreland came

by this knowledge because he was a friend of the family from the time that he was 12 or 13 years

old, because he had been to their home on numerous occasions over more than a decade, because

he worked for the business owner remodeling his home some years before the home invasion,

and lastly, because he had stolen the safe from the home some years before the robbery.  There is

nothing about this evidence that "amends" the charges in the indictment, and nothing about the

comments made by the government in summation that could be construed to have amended the

charges:

> "[T]he victim's family was specifically targeted.  And the reason why, ladies and
> gentlemen that family was targeted you heard in this case from a number of
> witnesses, was because he had stolen from them before. He knew what they kept
> at their house…..He knew that they were engaged—that the victim's father was
> engaged in---had two car lots.  He knew that it was a cash business.  Because you
> heard that when he was remodeling their garage, he stole the safe that was sitting
> in their driveway."

The fact that Moreland had previously stolen money from this same victim's

home actually supports the unrefuted evidence that the object of the home invasion robbery was

the proceeds from the business.  Moreland knew he would find cash – proceeds from the

business – in the home, which, not surprisingly, is exactly what happened.  The $1,200 in cash

taken from Ernie Manna V was business proceeds.  His attorney cannot be faulted for not

objecting to the comments made in summation when there was no error in the first place.  His

argument should be denied.

**C.      Defendant's Ground Two:  The Court's Instructions Erroneously Amended the Indictment in Violation of Defendant's Fifth Amendment Rights**

Defendant's next argument repeats the claim he made in his first allegation, namely that the defendant's Fifth Amendment rights were violated by the Court's erroneous "amendment" of the indictment in the same way that the prosecution did so.  For the same reasons and authorities cited above, his argument is incorrect and should be denied.

Defendant seems to focus his entire argument on the fact that the government failed to comment on the entire amount of evidence adduced at trial in summation.  Specifically, because the government did not address in summation the $1,200 in proceeds stolen from the intended victim's son or the car titles that the robbers intended to take but never found, that somehow that "amended" the charges.  But comments by counsel – or lack of comments on every piece of evidence - do not change the entirety of the evidence.  And the evidence in this case was uncontroverted.  The object of the robbery – which was discussed amongst the robbers prior to the home invasion - was business proceeds and car titles. The robbers were somewhat successful, in that they actually stole business proceeds.  The court properly commented on the evidence adduced at trial, and appropriately incorporated it into its instruction to the jury.  There was no error, and trial counsel cannot be held to be ineffective for his failure to object or raise an argument wholly without merit.  Moreland's argument on this point must fail.

**D.      Defendant's Ground Three:  Ineffective Representation for Failure to Raise Claim that Aiding and Abetting Does Not Apply to Attempted Hobbs Act Robbery**

Defendant's next allegation is that counsel failed to provide effective representation when he did not challenge Moreland's conviction for aiding and abetting the

16

crime of attempted Hobbs Act robbery.  As the defendant's conviction was proper, there was

nothing for trial counsel to have objected to, and his argument again fails.

> Hobbs Act robbery is codified at 18 U.S.C. § 1951, and criminalizes
>
> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

*18 U.S.C. § 1951(a)*.  Criminal liability also extends to anyone who "aids, abets, counsels,

commands, induces or procures" the robbery or attempted robbery. *18 U.S.C. § 2*.  Liability as an

aider and abettor requires proof that defendant associated himself with the venture, that he

participated in it as something he wished to bring about, and that he sought by his words or

action to make it succeed. *United States v. Xavier*, 2 F.3d 1281, 1288 (3d Cir. 1993) (aiding and

abetting an assault includes attempted assault, conviction upheld); *United States v. Bey*, 736 F.2d

891, 895 (3d Cir.1984) (aiding and abetting jury instruction proper).  The government can show

the requisite intent with evidence defendant encouraged or helped the perpetrator.  *See, e.g.,*

*Government of Virgin Islands v. Navarro*, 513 F.2d 11 (3d Cir. 1975) (convictions affirmed for

three defendants for aiding and abetting murder and assault.)

There is more than ample evidence that proved Moreland "associated himself

with this venture," and "encouraged or helped the perpetrators."  Moreland himself was a

perpetrator. Moreland chose these victims and the residence.  He recruited the others to take part

in the robbery.  He drove them to the residence, and showed them exactly where to make entry.

Moreland purchased the ammunition for the shotgun to be used in the robbery.  He directed what

was to be stolen during the robbery.  And of course, he shared in the proceeds from the robbery.

Defendant simply misinterprets the law when he asserts that aiding and abetting an attempted

robbery is not a criminal offense.  Def.Br. at 13.  Trial counsel is not ineffective for failing to

make an objection that is contrary to law.  Moreland's argument on this point must be denied.

> **E.   Defendant's Ground Four:  His Conviction and Sentence Violated his Fifth and Sixth Amendment Rights to Fair Notice of the Nature of the Charge and Have it Set Forth in the Indictment**

Moreland next attempts to subvert the law in 28 U.S.C. § 2255 by titling his last

argument as a violation of his Fifth and Sixth Amendment rights to "fair notice of the nature of

the charge and have it set forth in the Indictment."  He does so because 28 U.S.C. § 2255 limits

him to challenges involving constitutional issues.  In truth, this argument attacks his conviction

for Hobbs Act robbery on the premise that there was only a speculative effect on interstate

commerce, an argument that was already raised and rejected by the Third Circuit in his direct

appeal.  Regardless, his argument is without merit and should be denied.

Moreland cites to *United States v. Wang*, 222 F.3d 234, 240 (6th Cir. 2000) for the

proposition that a heightened standard must be applied when a Hobbs Act robbery is committed

against an individual or a private home.  Def.Br. at 13-14.  However, he fails to advise the court

that the Third Circuit explicitly rejected this heightened standard in *United States v. Shavers*, 693

F.3d 363, 376 (3d Cir. 2012):

> "We decline to adopt the heightened standard set forth in *Wang*. In this circuit, a robbery under the Hobbs Act need only have a "reasonably probable effect on commerce, however minimal." *[United States v.] Urban*, 404 F.3d 754, 763–64 [3d Circ. 2005]. The "substantial" connection required in *Wang* has no basis in our case law and adopting it would contradict our adherence to the requirement that a robbery need only "produce[ ] any interference with or effect upon interstate commerce, whether slight, subtle or even potential," in order to support prosecution under the Hobbs Act."

The law in the Third Circuit is clear.  All that is required to satisfy the jurisdictional nexus under the Hobbs Act robbery provision is proof of a de minimis effect on interstate commerce.  *United States v. Powell*, 693 F.3d 398, 402 (3d Cir. 2012); *United States v. Walker*, 657 F.3d 160,180 (3d Cir. 2011) (robbery of a drug dealer for $40 - $50 worth of cocaine); *United States v. Urban*, 404 F.3d at 766.  Moreover, the effect may be potential, not actual.  *United States v. Powell*, 693 F.3d at 402; *United States v. Shavers*, 693 F.3d at 372; *United States v. Haywood*, 363 F.3d 200, 209–10 (3d Cir.2004) (robbery of $70 from a bar). Proof that a Hobbs Act robbery depletes the assets of a business engaged in interstate commerce therefore satisfies the interstate commerce requirement. *United States v. Urban*, 404 F.3d at 766 n.3.  Even under the heightened standard in *Wang*, that court recognized that it may still be met "by demonstrating that the defendant knew of or was motivated by the individual victim's connection to interstate commerce."  *United States v. Wang*, 222 F.3d at 240.

In this case, that was overwhelmingly met at trial.  The unrefuted evidence established that this residence was targeted because the intended victim owned two car lots in Chester, Pennsylvania[3].  The trial testimony established that the business purchased cars from an auction house located in Maryland and transported the vehicles to the business in Pennsylvania for resale. Documents from the Maryland auction house were admitted at trial related to the two-week period before and after the home invasion, that demonstrated that the victim business purchased numerous cars in interstate commerce before and after the robbery. Clearly, the

---

3  Moreland incorrectly argues that the evidence "indicates that the petitioner conspired to rob the son of the owner of a business and his wife." Def.Br. at 15.  There was no evidence whatsoever of that at trial.  The unrefuted testimony was that the robbers intended to rob the owner of the car sales business, and entered the attached apartment of his son by mistake.  There was never a conspiracy or plan to rob the victim's son.  At all times the owner of the business was the intended victim.

undisputed evidence established that the victim conducted business that crossed state lines at the time that the defendant committed the robbery in this case.

Moreover, that the proceeds from the business were the object of the robbery was also undisputed.  A co-conspirator testified that Moreland instructed the other robbers to take $10,000 in cash and the car titles to the business, which would be located in a safe in the house. Specifically, Moreland advised Pinder and the others that after Moreland obtained the car titles, he was "going to take his [the victim's] whole car lot." When questioned as to why Pinder would believe they would find any kind of cash in the victim's personal residence, Pinder responded that Moreland and Foy both told him that the victim was "the guy who owned the car lot on 9th Street."  Victim #1 corroborated Pinder's account of events, testifying that the robbers kept asking where the money was, where the safe was, and specifically asked for "Ernie."  After the victim advised that the deposits from the business were made on Saturday (the day before the home invasion), the robbers responded by saying, "We know you got the car lot on 9th Street."

Significantly, though the robbers never obtained the thousands in cash and car titles from the business that they were after, the evidence demonstrated that the $1,200 in cash that they did steal was actual proceeds from the business.  That evidence certainly meets the "de minimus" standard required by this Circuit, and the Third Circuit in this case already found that the interstate nexus was met.  *United States v. Moreland*, No. 13-3691 (3d Cir. 2014).  Trial counsel cannot be found to be ineffective for failing to raise an objection at trial that clearly would have been denied.  Defendant's argument should be dismissed.

## IV.    DEFENDANT'S CLAIMS SHOULD BE DENIED WITHOUT A HEARING

A court must hold an evidentiary hearing on a motion under 28 U.S.C. § 2255 "unless the motion and files and records of the case show conclusively that the movant is not

entitled to relief." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (internal quotation marks and citations omitted). In considering a motion to vacate a defendant's sentence, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.' " Johnson v. United States, 294 F. App'x 709, 710 (3d Cir.2008). Indeed, "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing. . . ." Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987). The district court may, without further investigation, dispose of "vague and conclusory allegations contained in a § 2255 petition " without granting a hearing. Johnson, 294 F. App'x at 710 (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir.2000).

In this case, the records of the case show conclusively that Moreland is not entitled to relief under § 2255. Accordingly, the government requests that the Court not grant an evidentiary hearing.

## V.    A CERTIFICATE OF APPEALABILITY SHOULD NOT ISSUE

Upon the denial of a Section 2255 motion by the district court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. § 2253. The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The application for such a certificate should first be made to the District Court.

Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue.  If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253.  If an order denying a petition under § 2254 or § 2255 is accompanied by an

opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

In order to present a "substantial showing of a denial of any constitutional right," to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal. Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996). To establish the required showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question. United States v. Cepero, 224 F.3d 256, 262-68 (3d Cir. 2000) (en banc), cert. denied, 121 S. Ct. 861 (2001).

For the reasons stated above, the defendant has not made the required showing, and therefore a certificate of appealability should be denied.  The absence of merit of the defendant's constitutional claims is plain, and not debatable. Accordingly, the government

requests that in addition to denying his Petition, this court also find that the defendant has failed

to make a substantial showing of a denial of any constitutional right.

<div align="center" style="margin-left:auto">

Respectfully yours,

ZANE DAVID MEMEGER
United States Attorney


/s Michelle Rotella_____
MICHELLE ROTELLA
Assistant United States Attorney

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this pleading has been served by certified first-class mail, postage prepaid, upon counsel for defendant Moreland:

<div align="center">

Cheryl Sturm, Esquire
408 Ring Road
Chadds Ford, PA  19317
sturmcj@aol.com

</div>

/s Michelle Rotella
MICHELLE ROTELLA
Assistant United States Attorney

DATED: December 17, 2015.